Dear Senate Haney,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. Has the Oklahoma Center for the Advancement of Science andTechnology (OCAST) been authorized by the requisite 2/3 votemandated by Okla. Const. Article X, Section 15, to use the SeedCapital Revolving Fund created pursuant to 74 O.S. 5060.21(1989)?
2. Assuming that OCAST may use the Seed-Capital Revolving Fund,may it contract with a private investment fund manager to make"seed-capital" investments?
 I.
¶ 1 Pursuant to 74 O.S. 5060.21 (1989), the Legislature has established a fund under the control of the Oklahoma Center for the Advancement of Science Technology, called the "Seed-Capital Revolving Fund." The two main purposes of the fund are to invest in enterprises engaged in "new product or process innovations" and to make loans "to business incubator facilities in exchange for interests in the enterprises." 74 O.S. 5060.21(D) and 74O.S. 5060(E) (1989). Oklahoma's original Constitution probably would have forbidden public money to be invested in this manner. However, at an election held September 20, 1988, the people of the State of Oklahoma adopted an amendment to Okla. Const. Article X, Section 15 expressly granting the authority to OCAST (or a successor) to make grants or loans to private individuals and businesses.
¶ 2 The amended Article X, Section 15 of the Constitution has two conditions before public monies can be used by OCAST in such a manner. The first condition is that OCAST may only use public funds "not exceeding 1% of total State appropriations for the current fiscal year." The second condition requires a statute to be enacted by a 2/3 vote of the Legislature specifically authorizing such a use of public funds. The precise wording of the Constitution is as follows:
 The Oklahoma Center for the Advancement of Science and Technology or its successor may only use public funds for the purposes authorized in this subsection if a statute specifically authorizing such use is approved by an affirmative vote of at least two-thirds (2/3) of the members elected to the Senate and to the House of Representatives upon final passage of such measure in each of the respective houses and with the approval of the Governor.
¶ 3 It is important to point out that it is the authorizingstatute which must be passed by a two-thirds vote of the Legislature. This does not necessarily mean that a two-thirds vote is required for each appropriation bill funding these activities of OCAST. A statute is ". . . an act of the legislature as an organized body . . ." Commissioners' Court ofEl Paso County v. El Paso County Sheriff's Deputies Association,620 S.W.2d 900 (Tex.Civ.App. 1981). Any measure which is enacted by the constitutionally prescribed method for passing laws is a "statute." American Federation of Labor-Congress ofIndustrial Organizations v. Eu, 686 P.2d 609 (Cal. 1984), stay den. 468 U.S. 1310 (1984).
¶ 4 From the holdings of Oklahoma cases dealing with the effect of Legislative Resolutions, it would seem that Oklahoma would follow this same reasoning. In Ward v. State, 56 P.2d 136
(Okla. 1936), the Supreme Court held that a joint resolution passed by both Houses of the Legislature and signed by the Governor had the force and effect of law and was a "legislative enactment." In Wright v. State, 137 P.2d 796 (Okla. 1943) the Court stated that joint resolutions had the force and effect of a statute. Both of these cases are based on Okla. Const. ArticleVI, Section 11 which requires that bills and resolutions must be approved by both Houses and approved by the Governor to become alaw. We find that the requirement of an "authorizing statute" means that a measure must be passed by both Houses of the Legislature and approved by the Governor.
¶ 5 The critical requirement of Article X, Section 15 is not whether the authorization comes in the form of a resolution, appropriations bill or other law. The most important requirement is that the statute must "specifically authorize" the use of public funds for private purposes. Title 74 O.S. 5060.21 (1989) creates the "Seed-Capital Revolving Fund." This statute is quite lengthy and authorizes the Fund to be loaned or invested in a variety of private enterprises. OCAST may use the Fund to make "authorized investments" including loans, loans convertible to equity, equity, limited partnership agreements and other securities. 74 O.S. 5060.21(C)(1) (1989). The Fund may be used to "purchase qualified securities" which are issued by private "enterprises engaged in new product or process innovations." 74O.S. 5060.21(D) (1989). Because most, if not all, of the objects for funding listed in the statute involve funding private enterprise, we believe that this statute contains the "specific authorization" required by the Constitution.
¶ 6 The original version of 74 O.S. 5060.21 creating the Seed-Capital Revolving Fund was part of the omnibus "Economic Recovery Act of 1987." H.B. 1444, 1987 Okla. Sess. Laws, Ch. 222, p. 1319. This section of law was passed in anticipation of the passage of the amendment to Oklahoma Constitution Article X, Section 15. House Bill 1444, however, was not passed by a two-thirds vote of the Legislature so its passage did not trigger the conditions contained in the proposed amendment. In 1988, 5060.21 was amended by the Oklahoma Legislature. H.B. 1548, 1988 Okla. Sess. Laws, Ch. 246, 12.
¶ 7 The Oklahoma Constitution provides that when statutes are amended, the amended statute must be published "at length" and re-enacted in its entirety. Okla. Const. Article V, Section 57. That is precisely what took place with 74 O.S. 5060.21 when it was amended in 1988. Even though the original version defining the proper and legal uses of the Seed-Capital Revolving Fund did not pass by a two-thirds vote, the re-enacted version received far in excess of a two-thirds vote of the Legislature. The House Journal reflects a vote of 88 ayes, 5 nays, 7 excused and 1 vacancy. 1988 Okla. House Journal, pp. 1248-49. The Senate Journal reflects a vote of 43 ayes, 0 nays, 4 excused and 1 vacancy. 1988 Okla. Senate Journal, p. 848. The fact that the Legislature was amending an ineffective statute rather than passing a new statute does not affect its viability. See e.g.,St. Louis S.F.R. Co. v. Tolbert, 148 P. 128 (Okla. 1915).
¶ 8 The statutory amendment authorizing use of the Seed-Capital Fund, was approved on June 27, 1988, which was before the constitutional amendment was adopted by the people of Oklahoma. While the amended bill passed before the Constitution was officially amended, the statute that was passed in 1987 and amended in 1988, was passed in anticipation of the passage of the constitutional amendment. This is not unlike what occurred several years ago when the Oklahoma Industrial Finance Authority was authorized by Oklahoma Constitution Article X, Section 34. The Legislature passed implementing legislation in 1959 but the constitutional amendment was not approved until a year later in 1960. The Oklahoma Supreme Court found that this was permissible and held as follows:
 We therefore hold that there is no constitutional inhibition forbidding the enactment of an enabling act to become effective at a future date when and if a proposed constitutional amendment is adopted.
Application of Oklahoma Industrial Finance Authority,360 P.2d 720, 723 (Okla. 1961).
¶ 9 While 74 O.S. 5060.21 was not expressly passed contingent on the passage of the amendment to Okla. Const. Article X, Section 15, the Legislature passed the original version of the statute in the same session where it referred the proposed constitutional amendment to the people. H.J.R. No. 1029, 1987 Okla. Sess. Laws, p. 1717. For all practical purposes, it appears that the Legislature passed 74 O.S. 5060.21 in anticipation of the passage of the constitutional amendment. In our opinion, the provisions of 74 O.S. 5060.21 have been vitalized by the requisite two-thirds vote of the Oklahoma Legislature. OCAST may now implement the Seed Capital Revolving Fund.
 II.
¶ 10 Your second question is whether OCAST may hire a private investment fund manager to make the authorized investments under74 O.S. 5060.21. The Legislature has declared that OCAST is needed to ". . . stimulate seed-capital investment in firms which will use innovation from applied research in profitable commercial applications." 74 O.S. 5060.2(A)(3) (1989). The Legislature has also declared that part of the mission of OCAST is to promote innovation in existing and developing businesses ". . . by providing seed-capital for new innovative firms and their products." 74 O.S. 5060.3 (1989). The term "seed-capital" is defined in the statutes as follows:
 "Seed-capital" means financing that is provided for the development, refinement and commercialization of a product, process or innovation, whether for the start-up of a new firm or the expansion or the restructuring of a small firm;
74 O.S. 5060.4(15) (1989).
¶ 11 To carry out the purposes of the Seed-Capital Revolving Fund, OCAST is expressly instructed to use the fund to make "authorized investments." In making these investments, OCAST has been given the authority to enter into "management or consultant service agreements." 74 O.S. 5060.21(C)(1)(c) (1989). OCAST is also specifically authorized to carry out its duty by ". . . participation as a general or limited partner in other seed-capital funds or participation as a limited partner in individual cases as authorized by the board of directors." 74O.S. 5060.21(C)(1)(g).
¶ 12 It is quite clear that the Legislature has given OCAST broad discretion to carry out its authorized activities and to put the Seed-Capital Revolving Fund to work in the State of Oklahoma. It may opt to make these investments directly with certain business enterprises, it may hire private investment managers to guide the use of the fund, and it has express authority to pool its monies with other "Seed-Capital Funds" (public or private) to carry out its mission of fostering economic development.
¶ 13 It is, therefore, the official opinion of the AttorneyGeneral that:
1. The Oklahoma Center for the Advancement of Science andTechnology (OCAST) has been authorized by the requisite 2/3 votemandated by Okla. Const. Article X, Section 15, to implement theSeed-Capital Revolving Fund created by 74 O.S. 5060.21 (1989)for purposes of investing public funds in private companies.
2. In order to implement the Seed-Capital Revolving Fund OCASTmay retain private investment fund managers to make investmentswhen OCAST chooses to make such investments including investmentsmade as a limited partner pursuant to 74 O.S. 5060.21(1989).
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
THOMAS L. SPENCER ASSISTANT ATTORNEY GENERAL